UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                           :

CINDY CONAHAN,                              :

                   Plaintiff,         :

                                             :               20-cv-1325 (LJL)

         -v-                               :

                                             :        OPINION AND ORDER

MEDQUEST LTD., et al.,                 :

                                             :

                   Defendants.      :

                                             :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Plaintiff Cindy Conahan ("Plaintiff") initiated this action on February 14, 2022 by filing a

complaint against MedQuest, LTD. ("MedQuest"), Leslie Inzunza ("Inzunza"), and Elliot Stone

("Stone") (collectively, "Defendants"), asserting claims for age and gender discrimination and

retaliation in violation of the New York State Human Rights Law, Executive Law § 296, *et seq.*

("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.*

("NYCHRL"). Dkt. No. 1. In response, Defendants asserted a counterclaim for breach of

fiduciary duty against Plaintiff. Dkt. No. 61.

       Before the Court are cross-motions for summary judgment. Plaintiff moves for summary

judgment on Defendants' counterclaim for breach of fiduciary duty. Dkt. No. 77. Defendants

move for summary judgment on Plaintiff's claims for retaliation and discrimination. Dkt. No.

71.

       Plaintiff's motion for summary judgment on the breach of fiduciary duty counterclaim

and Defendants' motion for summary judgment on the age discrimination and retaliation claims

are denied. Those claims, at least in part, present genuine issues of material fact that require

trial.  Defendants' motion for summary judgment is granted with respect to Plaintiff's claims for

gender discrimination.[1]

## BACKGROUND

The following facts, which are largely drawn from the parties' Local Rule 56.1

statements of facts, Dkt. Nos. 86, 90, are undisputed unless otherwise indicated.

MedQuest describes itself as a litigation support company providing a range of services

to litigators and it employed approximately six to seven employees during the relevant time

period.  Dkt. No. 90 ¶¶ 1, 2.  Stone is the Chief Executive Officer and President of MedQuest.

*Id.* ¶ 2.  Inzunza is Stone's wife and the parties dispute whether Inzunza worked as an

independent contractor or employee for MedQuest from December 2018 to October 2019.  *Id.*

Plaintiff was hired by MedQuest in 1991 as the company's office manager.  *Id.* ¶ 3.

Eventually, Plaintiff obtained complete control of the daily office operations and management of

MedQuest.  *Id.* ¶ 5.  Stone described Plaintiff as performing a number of different jobs and, for

the most part, doing a good job.  *Id.* ¶ 30.  The parties dispute, however, whether at a certain

point Stone noticed a deterioration in Plaintiff's ability to get along with other employees and

"keep her cool."  *Id.* ¶ 31.

Around 2019, Stone hired a group of forensic accountants to review MedQuest's systems

and explore upgrading them; the consultants ultimately issued a report with their

---

[1] Defendants move, with the consent of Plaintiff's counsel, to seal Exhibit F to the Declaration of
Elliot Stone, noting that "[a]fter the filing of our motion, Plaintiff's counsel informed us that we
inadvertently included Plaintiff's social security number."  Dkt. No. 91.  Exhibit F is a W-2 wage
and tax statement for Plaintiff and includes her social security number, employer identification
number, and wages from 2016 to 2019.  Dkt. No. 84-6.  Plaintiff's social security number
(except its last four digits) shall remain sealed pursuant to Federal Rule of Civil Procedure
5.2(a).  To the extent that either party seeks additional portions of the document to be sealed, that
party must explain why the presumption of public access to judicial documents should be
overcome with respect to those additional portions.  *See generally Lugosch v. Pyramid Co. of
Onondaga*, 435 F.3d 110 (2d Cir. 2006).

recommendations for changing operations in the office. *Id.* ¶¶ 46, 47. On July 31, 2019, Inzunza held a meeting with the office staff and forensic accountants to review their findings and recommendations. *Id.* ¶ 48. Following the meeting, Inzunza sent an email to Stone noting that based on Plaintiff's adverse reaction in the meeting, Plaintiff required reassurance that she would still be in charge of the finances of the company following any improvements implemented at the recommendation of the forensic accountants. *Id.* ¶ 49. Inzunza also noted that Plaintiff needed to understand that she would be working with Inzunza to implement those improvements. *Id.*

The next day, on August 1, 2019, Plaintiff met with Inzunza in Plaintiff's office. *Id.* ¶ 51. The parties dispute exactly what occurred at that meeting. Defendants claim that at the meeting Inzunza told Plaintiff that once MedQuest completes its technological updates, all employees will have more flexibility and all employees, including Plaintiff, will have the opportunity to work from home so that they would not need to commute into New York City every day. *Id.* ¶ 52. Defendants claim that Plaintiff then "raised her voice and let loose a litany of complaints against Defendant Stone" and that, in response, Inzunza told Plaintiff to "lay off the Xanax." *Id.* While Plaintiff agrees that Inzunza told Plaintiff to "lay off the Xanax," *id.*, Plaintiff claims that Inzunza also told her that she was "too old to commute to New York." *Id.* ¶ 53.

After the meeting, Inzunza and Plaintiff went into Stone's office. *Id.* ¶ 53. While Plaintiff testified that she did not mention anything specifically about age discrimination to Stone at that meeting, she also testified that she told Stone that Inzunza had told her that she was "too old to commute" to New York City. *Id.* ¶ 55; *see also* Dkt. No. 73-2 at 81. After the meeting, Inzunza drafted a summary of the meeting between herself and Plaintiff. Dkt. No. 90 ¶ 57. In that summary, Inzunza wrote, among other things, that: "I also told her that if she felt too tired

3

and didn't want to be bothered with learning new systems, that was valid and she could choose to do something else; we would wish her well." Dkt. No. 73-8.

The next day, on Friday, August 2, 2019, Stone called Plaintiff and said that they needed to talk about what happened. Dkt. No. 90 ¶ 58; Dkt. No. 73-2 at 78. He said that he was leaving for vacation the following week and that he would meet with her when he came back. Dkt. No. 90 ¶ 58; Dkt. No. 73-2 at 79. Inzunza went on the vacation with Stone and, while on vacation, the two discussed Plaintiff's termination. Dkt. No. 73-1 at 65; Dkt. No. 73-5 at 89. Stone cut short the scheduled one week-vacation and returned to work a couple of days early in order to catch Plaintiff in the office and terminate her employment. Dkt. No. 73-1 at 64–65. Stone terminated Plaintiff's employment on August 8, 2019, immediately upon his return from vacation. Dkt. No. 90 ¶¶ 3, 59. Plaintiff was sixty-six years old at the time her employment was terminated. Dkt. No. 73-2 at 93.

## PROCEDURAL HISTORY

On February 14, 2020, Plaintiff filed a complaint in this Court. Dkt. No. 1. The complaint asserted claims for age and gender discrimination and retaliation in violation of the NYSHRL and the NYCHRL. *Id.*

On April 24, 2020, Defendants filed their answer and counterclaim, Dkt. No. 5, and on February 28, 2022, Defendants filed an amended answer and counterclaim, Dkt. No. 61. In that amended counterclaim, Defendants asserted a claim for breach of fiduciary duty against Plaintiff, asserting that she, among other things, misappropriated to herself MedQuest funds earmarked for distribution to employees to reimburse them for commuting to work and wrote checks to pay for purely personal expenses. Dkt. No. 61 ¶¶ 95–99. Defendants requested relief in the form of forfeiture and disgorgement of all "compensation including bonuses, since this conduct began[,] and return [of] such monies to Defendants." *Id.* ¶ 99.

4

On June 16, 2022, Defendants moved for summary judgment on each of Plaintiff's claims, Dkt. No. 71, and Plaintiff filed her motion for summary judgment on Defendants' counterclaim, Dkt. No. 77.  The parties each filed oppositions to the motions for summary judgment on July 18, 2022, Dkt. Nos. 87, 88, and their reply briefs on August 1, 2022, Dkt. Nos. 92, 93.  The Court heard oral argument on the motions on October 26, 2022.

## LEGAL STANDARD

The standards applicable to this case are well settled.  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'"  *Id.* at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor."  *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).  When more than one party moves for summary judgment, "each party's motion must be examined on its own merits and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Century Sur. Co. v. Franchise Contractors, LLC*, 2016 WL 1030134, at *3 (S.D.N.Y. Mar. 10, 2016) (quoting *Morales v Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

In cases involving claims of discrimination or retaliation, "an extra measure of caution is merited in affirming summary judgment . . . because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and

depositions." *Chiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d. Cir. 2001)); *see Wilkerson v. Metro. Transp. Auth.*, 2021 WL 5761649, at *5 (S.D.N.Y. Dec. 3, 2021). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). "[T]rial courts should not 'treat discrimination differently from other ultimate questions of fact,'" *id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)), and even in the discrimination context, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *see Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

## DISCUSSION

Defendants move for summary judgment on each of Plaintiff's claims and Plaintiff cross-moves for summary judgment as to Defendants' counterclaim. The Court first addresses Defendants' counterclaim for breach of fiduciary duty, then Plaintiff's claims for age and gender discrimination, and finally Plaintiff's claims for retaliation.

## I.     Breach of Fiduciary Duty

Defendants' counterclaim is based on two forms of alleged conduct: (i) that from December of 2013 to July of 2016, Plaintiff, while she was employed at MedQuest and without authorization, wrote checks to herself from the company checkbook and/or wrote checks to cash, which she then used to pay for her own personal expenses; and (ii) that from 2014 to 2019, Plaintiff took "vouchers from the TransitChek program, which Plaintiff administered, when she was not entitled to such vouchers." Dkt. No. 84-5; Dkt. No. 87 at 3–4; *see* Stone Decl. ¶ 17.

6

First, Plaintiff moves to dismiss the counterclaim as time-barred.  Plaintiff argues that any part of the counterclaim that is based on acts occurring more than three-years before the initial answer and counterclaim were filed—*i.e.*, April 24, 2022—is barred by the three-year statute of limitations.  Dkt. No. 79 at 5–7.  Defendants do not dispute that the three-year statute of limitations applies to their claim for "monetary damages."  *See* Dkt. No. 87 at 11.  However, Defendants argue that the three-year statute of limitations did not begin to run until Plaintiff's employment was terminated pursuant to the open repudiation doctrine and thus a claim for breach of fiduciary duty premised on any acts occurring while Plaintiff was still employed at MedQuest (no matter how long ago they occurred) is timely.  *Id.*

Under New York law, claims for breach of fiduciary duty seeking monetary damages are subject to a three-year statute of limitations (as opposed to the six-year statute of limitations for claims for equitable relief),[2] *see VA Mgmt., LP v. Est. of Valvani*, 146 N.Y.S.3d 21, 22 (1st Dep't 2021); *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164 (1st Dep't 2003), and generally begin to accrue at the time of breach, *see Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 581 (E.D.N.Y. 2014); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 272–73 (N.Y. 2009).  "An exception to this standard can be found in the open repudiation doctrine, under which 'the limitations period for claims arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his or her obligation or the relationship has

---

[2] New York law applies a six-year statute of limitations for causes of action for breach of fiduciary duty based on allegations of actual fraud regardless of the remedy sought.  *See Diesenhouse v. Social Learning and Payments, Inc.*, 2022 WL 3100562, at *10 (S.D.N.Y. Aug. 3, 2022); *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 262 (S.D.N.Y. 2008).  Defendants, however, do not argue that their breach of fiduciary duty claim sounds in actual fraud and thus the Court does not address whether the six-year statute of limitations would apply on that basis. *See* Dkt. No. 87 at 11 ("Plaintiff correctly notes a breach of fiduciary duty claim seeking to recover monetary damages is limited by a three-year statute of limitations.").

been otherwise terminated.'" *Horan v. Vieira*, 2021 WL 1200220, at *6 (E.D.N.Y. Mar. 12,

2021), *report and recommendation adopted*, 2021 WL 1193146 (E.D.N.Y. Mar. 30, 2021)

(quoting *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 397 (E.D.N.Y. 2018)).

However, "[t]he open repudiation doctrine applies only [] to claims for equitable relief, and not

to claims for money damages." *Willensky v. Lederman*, 2015 WL 327843, at *10 (S.D.N.Y. Jan.

23, 2015); *see Kleiman v. Kings Point Cap. Mgmt., LLC*, 2020 WL 7249441, at *12 (E.D.N.Y.

Sept. 30, 2020), *report and recommendation adopted*, 2020 WL 7021648 (E.D.N.Y. Nov. 30,

2020) ("Plaintiff seeks only monetary relief in the amount of $3.5 million; therefore, the open

repudiation doctrine is inapplicable to her breach of fiduciary duty claim."); *Bd. of Trustees ex*

*rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, 2012 WL 3930112, at *9 (S.D.N.Y. Sept. 10,

2012) (Sullivan, J.) ("Unfortunately for Plaintiffs, the open repudiation doctrine is inapplicable

to Plaintiffs' claim because the doctrine only applies to the six-year statute of limitations for

equitable relief—not the three-year period for monetary damages."); *VA Mgmt., LP*, 146

N.Y.S.3d at 22; *Cusimano v. Schnurr*, 27 N.Y.S.3d 135, 139 (1st Dep't 2016) ("[P]laintiffs seek

money damages for their breach of fiduciary claims, and thus this rule is inapplicable.").

Defendants concede that their counterclaim—for which they seek "all compensation,

including bonuses" and benefits, that Plaintiff received during the relevant time period, Dkt. No.

61 at ECF p. 11; Dkt. No. 84 at 5—is one for "monetary damages" and that the three-year statute

of limitations applies. Dkt. No. 87 at 11.[3]  Because Defendants claim to seek "monetary

---

[3] Treating Defendants' requested relief as one for monetary damages, not equitable relief, is
consistent with how New York courts have treated breach of fiduciary duty claims seeking
forfeiture of a former employee's compensation. *See ALP, Inc. v. Moskowitz*, 167 N.Y.S.3d 45,
52 (1st Dep't 2022) (finding breach of fiduciary duty claim subject to three-year statute of
limitations where party sought commissions as form relief); *Access Point Med., LLC v. Mandell*,
963 N.Y.S.2d 44, 47 (1st Dep't 2013) ("[P]laintiffs' demand for the return of attorneys' fees they

damages," New York law holds that Defendants' counterclaim accrued at the time of the breach and is not tolled pursuant to the open repudiation doctrine.  *See BNY Mellon, N.A.*, 2012 WL 3930112, at *9 ("Unfortunately for Plaintiffs, the open repudiation doctrine is inapplicable to Plaintiffs' claim because the doctrine only applies to the six-year statute of limitations for equitable relief—not the three-year period for monetary damages.").

That conclusion offers Plaintiff only limited relief.  The conduct occurring prior to April 24, 2017 (*i.e.*, three years before Defendants asserted their counterclaim in this case) cannot alone and independently support a timely claim for breach of fiduciary duty.  However, Defendants' claim for breach of fiduciary duty encompasses conduct within the three-year time period prior to the filing of the complaint.  Specifically, Defendants allege that Plaintiff breached her fiduciary duties in connection with conduct related to the TransitChek program which took place between the time period of April 2017 to August 2019.  Thus, even though Defendants may not be able to pursue certain conduct at least on a stand-alone basis, Defendants' claim for breach of fiduciary duty itself is not untimely.[4]

Defendants have also proffered sufficient evidence to create a triable issue of material fact that Plaintiff breached her fiduciary duty by taking vouchers from the TransitChek program,

---

paid to defendants is, essentially, a claim for monetary damages" and "[t]he calculated use of the term 'disgorgement' instead of other equally applicable terms such as repayment, recoupment, refund, or reimbursement, should not be permitted to distort the nature of the claim so as to expand the applicable limitations period from three years to six."); *see also Wagley v. JP Morgan Chase Bank, N.A. as trustee of Mary Penney Wagley Irrevocable Tr.*, 2020 WL 5768688, at *6 (S.D.N.Y. Sept. 26, 2020).

[4] The counterclaim invokes the faithless servant doctrine theory of relief for claims of breach of fiduciary duty.  Dkt. No. 62 p. 11 ¶ 99; *see Tyco Intern., Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 562 (S.D.N.Y. 2010) (discussing doctrine).  However, neither party addresses whether the facts here are sufficient to give rise to the relief provided under that doctrine or whether, to the extent it is applicable at all, it would permit Defendants to reach back and obtain relief for conduct occurring prior to April 24, 2017.  Accordingly, in the absence of briefing, the Court does not address those issues now.

as well as writing checks to herself or to cash, to which she was not entitled.  Defendants submitted evidence that Plaintiff was in charge of administering the TransitChek program for MedQuest: Inzunza submitted a sworn declaration stating that until Plaintiff's termination, Plaintiff was in charge of administering the TransitChek program, including asking employees how much they wished to purchase to cover their commuting and other allowable travel expenses, deducting that amount from employees' paychecks on a pre-tax basis, and ordering TransitChek debit cards in that employee-designated amount.  Dkt. No. 85 ¶ 4.  Construed favorably to the non-moving parties, Defendants' evidence also supports that MedQuest funds were improperly paid out to TransitChek for debit cards and vouchers and that Plaintiff did not document what happened to these additional TransitChek debit cards and/or vouchers:  Inzunza stated in her declaration that after Plaintiff left her employment at MedQuest and Inzunza took over the administration of the program, Inzunza reviewed the business records prepared by Plaintiff concerning the prior history of the TransitChek program and noted a discrepancy in the deductions from employee payroll and payments to the Transit Authority—specifically that MedQuest was paying more money to TransitChek than it was collecting from the employee deductions for each of the years from 2014 to 2019.  *Id.* ¶¶ 6–7.  She noted that to check her conclusion, attorneys for MedQuest subpoenaed the TransitChek records and confirmed that over $20,000 in TransitChek debit cards and vouchers were missing.  *Id.* ¶ 9.  From Defendants' evidence—that funds were missing and that Plaintiff exercised total control over the administration of those funds during the relevant period—a reasonable juror could infer that Plaintiff used her position at MedQuest to take TransitChek funds to which she was not entitled

and thus did not exercise "the utmost faith and loyalty in the performance of [her] duties."[5]

*Zurich Am. Life Ins. Co. v. Nagel*, 2022 WL 759375, at *12 (S.D.N.Y. Mar. 14, 2022) (citation

omitted).[6]

Plaintiff presented similar evidence related to the checks Plaintiff allegedly wrote to

herself from the company checkbook and/or to cash.  Stone submitted a declaration, attaching

multiple "MedQuest" checks that Plaintiff wrote to cash and appears to have endorsed with her

signature on the back.  Dkt. Nos. 84, 84-5.  He further declares that "Plaintiff was not given

permission or authorization to write and cash such checks."  Dkt. No. 84 ¶ 18.  While Plaintiff

appears to claim that these checks were authorized by Stone, a reasonable juror could conclude

from Stone's testimony that he did not authorize them and that Plaintiff wrote and endorsed these

checks without company authorization.  The Court therefore denies summary judgment on

Defendants' counterclaim.

---

[5] Plaintiff appears to argue that such conduct cannot form the basis for a breach of fiduciary duty
claim because Defendants "could not identify transactions where transit checks were used to
purchase something other than transportation."  Dkt. No. 79 at 9.  But if Plaintiff took money
from the company to which she was not entitled and for her own personal use, as Defendants
allege, it does not matter whether she spent that money on transportation or on something else.
[6] The Court rejects Plaintiff's argument that summary judgment should be granted on
Defendants' counterclaim due to lack of proof of damages incurred.  First, it is evident that if
Plaintiff did improperly write checks out to herself or improperly took benefits from the
TransitChek program, Defendants would have incurred damages.  While Defendants may not
have calculated the precise amount of those damages, "[f]or purposes of summary judgment,
plaintiffs need not, however, prove the exact amount of such damages."  *Nagel*, 2022 WL
759375, at *9.  Furthermore, the Second Circuit—although noting that the New York Court of
Appeals had not squarely addressed the issue—recently held that: "When a principal seeks to
recover compensation from an unfaithful servant, the principal need not allege damage other than
the compensation it paid the servant to satisfy the 'damage' element of a claim for breach of
fiduciary duty under New York law."  *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d
Cir. 2020).

## II.     Discrimination

Discrimination claims under the NYSHRL are governed by the familiar three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323–24 (S.D.N.Y. 2020). "Under this framework, at the summary judgment stage, a plaintiff must first demonstrate a prima facie case of employment discrimination by showing that: '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Id.* (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)). If the plaintiff meets that minimal burden, the "burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for the allegedly discriminatory conduct." *Id.*; *see Wilkerson*, 2021 WL 5761649, at *6. "Upon such a showing, the plaintiff must demonstrate that the reasons offered by the defendant are a mere pretext for discrimination." *Id.*

"Courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions 'broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible.'" *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75 (2d Cir. 2015) (quoting *Mihalek v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 109, 109 (2d Cir. 2013)). However, even under this broad analysis, "the plaintiff must establish a prima facie case, and the defendant then has the opportunity to offer legitimate reasons for its actions. If the defendant satisfies that burden, summary judgment is appropriate if no reasonable jury could conclude either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Id.* at 76 (internal quotation marks omitted); *see also*

12

*Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 171 (S.D.N.Y. 2011) (noting that "for both discrimination and retaliation claims under the NYCHRL, courts continue to apply the three-step, burden-shifting framework that the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*").  While "claims under the NYCHRL are more liberally construed than claims under Title VII . . . , the NYCHRL does not alter the kind, quality, or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56."  *Id.* at 170–71 (internal quotation marks omitted).

Defendants do not appear to contest that Plaintiff falls within protected classes based on her age and gender and that she was subject to an adverse employment action; instead, they argue that Plaintiff has not proffered sufficient evidence that her termination occurred under circumstances giving rise to an inference of either age or gender discrimination.  Dkt. No. 72 at 13–25.

### A.    Age Discrimination

The Second Circuit has stated that stray-age related remarks may raise an inference of discriminatory motive where they "(1) [were] made repeatedly, (2) drew a direct link between [discriminatory] stereotypes and the adverse employment decision, and (3) were made by supervisors who played a substantial role in the decision to terminate."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (quoting *Naumovski v. Norris*, 934 F.3d 200, 216 n.47 (2d Cir. 2019)).  Courts also look to "when the remark was made in relation to the employment decision at issue."  *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (quoting *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004)).

Considering these factors, Plaintiff has met her "minimal burden" of establishing a *prima facie* case of discrimination based on age.  *See Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 254 (S.D.N.Y. 2015).  The remarks at issue were allegedly made just prior to Plaintiff's

termination and there is evidence that Plaintiff's termination flowed directly from the meeting at which those remarks were allegedly made.  Plaintiff and Inzunza's meeting (in which Inzunza made the alleged remarks) took place on Thursday, August 1, 2019 and Stone called Plaintiff the next day stating that he wanted to talk to her about what happened but would wait until he got back from vacation.  Dkt. No. 90 ¶¶ 51, 58.  Inzunza and Stone then went on vacation.  Dkt. No. 73-1 at 65; Dkt. No. 73-5 at 89.  During the vacation, Inzunza and Stone discussed Plaintiff's termination, Dkt. No. 73-1 at 65, and Stone returned from that vacation a few days early in order to catch Plaintiff in the office and to terminate her employment, *id.* at 64–65.  While Defendants present evidence that the decision to terminate Plaintiff's employment stemmed from Plaintiff's behavior at that August 1, 2019 meeting and was unrelated to any discriminatory comments that Inzunza may have made at the meeting, a reasonable jury could find that Plaintiff was terminated as a result of the age-related views allegedly expressed by Inzunza at the meeting with Plaintiff based on: (i) the close nexus between the meeting at which the alleged discriminatory remarks took place and Plaintiff's termination, (ii) Inzunza's relationship with Stone and the evidence that the two discussed Plaintiff's termination while they were on vacation, and (iii) Stone's announcement to Plaintiff that she was terminated immediately after that vacation (and apparently without any intervening discussion between Stone and any other employee about Plaintiff or any intervening conduct by Plaintiff).

 Plaintiff has also proffered evidence that the age-related remarks were made more than once:  Not only did Plaintiff testify that Inzunda told her that she was "too old to commute to commute to New York," Dkt. No. 90 ¶ 53, Inzunza also wrote in her summary of the meeting that she told Plaintiff that "if she felt *too tired* and didn't want to be bothered with learning new

systems," she could leave the company,[7] Dkt. No. 73-8 (emphasis added).  These statements could also be interpreted as drawing a direct link between discriminatory stereotypes regarding Plaintiff's age (*i.e.*, that her opposition to the "new systems" was based on her age and that she was "too old to commute") and the adverse employment decision ultimately made—*i.e.*, Plaintiff's termination.  Although the first statement could be read merely as expressing the view that the new systems were intended to help Plaintiff perform her job, "there is just enough ambiguity in [that] statement[]—given the particular facts of this case, and viewed in the light most favorable to the non-moving party" to raise the alternative inference that Inzunza believed that Plaintiff was too old to perform her job properly and therefore should leave the company. *Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, 2022 WL 480477, at *3 (2d Cir. Feb. 17, 2022).  Furthermore, while Inzunza was not the person who actually terminated Plaintiff's employment, a reasonable jury could find that Inzunza—who was the wife of Stone, went on vacation with him directly prior to Stone's decision to terminate Plaintiff, and, according to Plaintiff, claimed to be Stone's "memory and his mind," Dkt. No. 73-2 at 61—"played a substantial role in the decision to terminate" Plaintiff's employment.  *Lively*, 6 F.4th at 306.[8]

Defendants have also introduced evidence, which if taken as true, would permit the conclusion that there was a legitimate nondiscriminatory basis for Plaintiff's termination.  *See Holcomb*, 521 F.3d at 141.  In particular, Defendants have introduced evidence that Plaintiff had problematic and confrontational interactions with employees over the years, was counseled about

---

[7] Plaintiff also claim that Inzunza made other age-related comments about Stone, stating that he had a "reptilian brain" and that she had become his "memory and his mind."  Dkt. No. 73-2 at 62.

[8] While Stone is a member of the same protected class as Plaintiff and thus the "inference against discrimination" applies, that "inference is not dispositive, since members of a protected class can discriminate against other members of that class."  *Meyer v. McDonald*, 241 F. Supp. 3d 379, 390–91 (E.D.N.Y. 2017), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018).

them on numerous occasions, and was warned that similar behavior would result in her termination. Dkt. No. 73-1 at 49, 53. Those confrontations culminated in the confrontation with Inzunza the week prior to her termination, which Defendants claim resulted in Defendants' decision to terminate Plaintiff's employment. Dkt. No. 73-1 at 58. Taking this evidence as true, Defendants have met their burden of at the second step of the *McDonnell Douglas* burden-shifting framework.

Nonetheless, Plaintiff "raises several arguments as to why a jury could conclude, by a preponderance of the evidence, that this reason was pretextual." *Milord-Francois*, 2022 WL 480477, at *3. Viewing the evidence in the light most favorable to the non-moving party, Inzunza's comments about Plaintiff being "too tired" to learn new systems and "too old" for her commute were made only a week prior to Plaintiff's termination and came out of nowhere: Stone testified that Plaintiff had never said anything to him about not being able to handle her commute and had stated that she would be a "team player" with respect to upgrading the company's statements. Dkt. No. 73-1 at 59–61. Moreover, the evidence suggested that Stone viewed Plaintiff—despite any confrontational interactions she had with employees over the years—as a valuable employee up until her termination: Plaintiff recalled "glowing, stellar, annual reviews" from Stone and Stone himself testified about Plaintiff's performance: "I think she did a lot of different jobs and, for the most part, I think and I believe she was doing a good job." Dkt. No. 73-1 at 48. Construing this evidence in the light most favorable to Plaintiff, a reasonable juror could find that something changed after the meeting with Inzunza and Inzunza's vacation with Stone, specifically that Stone and Inzunza formed a negative view about Plaintiff based on her age and that the allegedly discriminatory views expressed by Inzunza—and not Plaintiff's job performance—were the real reason why Plaintiff's employment was terminated. In short, the

jury could conclude that Defendants' proffered reason of Plaintiff's confrontational manner was merely pretext.  Accordingly, the Court denies summary judgment on Plaintiff's age-based discrimination claim.

### B.    Gender Discrimination

Plaintiff's gender discrimination claim, however, does not raise a genuine issue of material fact and thus summary judgment is warranted on this claim.  In opposing summary judgment, Plaintiff appears to argue that she faced two types of discriminatory actions because of her gender: (1) the filing of a counterclaim against her[9] and (2) her termination.  In support of both arguments, Plaintiff points to other male employees at MedQuest whom she claims she was treated "less well" than.  Dkt. No. 88 at 19.  Specifically, regarding the filing of a counterclaim against her, Plaintiff points to evidence that one male employee (Ryan Hilario) worked for another company while working for Defendants and another (Peter Pawelczak) took his wife to a trade show in Florida and had the company pay for her expenses, and neither was sued for such conduct.  *Id.*  And regarding her claim of gender discrimination based on termination, Plaintiff notes that Pawelczak "was verbally abusive, used foul language, and consistently called Plaintiff a f***ing bitch," but was not disciplined for these actions.  *Id.*

While a "plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside his protected group," the plaintiff must provide "sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'"  *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (quoting *Sutter v. Dibello*, 2021 WL 930459, at

---

[9] In moving for summary judgment on this claim, Defendants do not raise the issue of whether the filing of a counterclaim against a former employee can constitute an adverse employment action for purposes of gender discrimination under New York State or New York City law.  Accordingly, the Court does not address that issue.

*21 (E.D.N.Y. Mar. 10, 2021)).  In other words, "[t]he alleged comparator must be similar enough 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'"  *Id.* (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)).

Plaintiff offers insufficient evidence from which this Court could find that these male employees are appropriate comparators.  Both of the male co-workers had different jobs than Plaintiff and engaged in different conduct than that of Plaintiff.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (holding that plaintiff and comparator must be "subject to the same workplace standards" and "the conduct for which the employer imposed discipline" must be "of comparable seriousness").  That Hilario may have had a second job while employed at MedQuest is entirely distinct from the type of activity that Defendants allege Plaintiff engaged in (*i.e.*, stealing funds from the company) and which led Defendants to bring a counterclaim against her.  *See Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 464 (S.D.N.Y. 2006) ("When a plaintiff's misconduct is objectively more serious than that of a proposed comparator, differential treatment by the employer does not create an issue of fact that will defeat a motion for summary judgment.").  And while the accusations against Pawelczak related to the trade show are more similar to those against Plaintiff in that they both involve stealing money from MedQuest, Plaintiff proffers no additional bases for thinking that her and Pawelczak's circumstances "bear a reasonably close resemblance," *Bloomberg L.P.*, 568 F. Supp. 3d at 321.  To the contrary, the evidence indicates that that there were significant distinctions between the two individuals and between the two accusations, including that Stone believed that Pawelczak stole only "several hundreds [of] dollars," Dkt. No. 73-1 at 54, whereas Defendants accuse Plaintiff of stealing tens of thousands of dollars over the course of several years.  *See Cardwell v. Davis Polk & Wardwell*

*LLP*, 2020 WL 6274826, at *21 (S.D.N.Y. Oct. 24, 2020) ("An employee is similarly situated to

co-employees if they . . . engaged in comparable conduct." (citation omitted)).  And while

Pawelczak may have used "foul language" about certain MedQuest employees, it is not alleged

that he used such language about the head of the company, Stone, and/or Stone's wife, as

Plaintiff is alleged to have done.  Dkt. No. 90 at 16, 24.  Moreover, Plaintiff's allegations that

Pawelczak was never disciplined for his "awful conduct" is belied by the record.  Dkt. No. 88 at

19.  As Plaintiff herself testified, Stone asked her to make "disciplinary notes" about Pawelczak,

who "was eventually terminated."[10]  Dkt. No. 73-2 at 85.  Accordingly, Plaintiff has not

established a *prima facie* case of gender discrimination and Defendants are entitled to summary

judgment on this claim.

## III.    Retaliation

"A plaintiff alleging retaliation in violation of the NYSHRL must show that (1) he or she

engaged in a protected activity by opposing conduct prohibited thereunder; (2) the defendant was

aware of that activity; (3) he or she suffered an adverse action based upon his or her activity; and

(4) there was a causal connection between the protected activity and the adverse action." *Bilitch*

*v. New York City Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 245–46 (2d Dep't 2021).  "The

NYCHRL offers retaliation victims, like discrimination victims, broader protection than its

NYSHRL counterpart." *Id.* at 246.  "[T]o make out an unlawful retaliation claim under the

NYCHRL, a plaintiff must show that (1) he or she engaged in a protected activity as that term is

---

[10] While Plaintiff testified during her deposition that Stone treated certain female employees differently from male employees, including by having women "pick up the slack" for male employees, Dkt. No. 73-2 at 82 ("there were situations in the office where the men were handled differently than the women"), it is unclear from her testimony whether Plaintiff *herself* claims to have been the subject to any of this discriminatory treatment.  Plaintiff also does not make this argument in opposition to Defendants' motion for summary judgment.  Accordingly, the Court deems any argument based on that evidence abandoned and therefore does not address it.

defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." *Id.* (quoting *Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 681 (2d Dep't 2019)).

Defendants argue that Plaintiff's retaliation claims in violation of NYSHRL and NYCHRL cannot stand because Inzunza—who engaged in the allegedly discriminatory conduct about which Plaintiff allegedly complained—was not a MedQuest employee, but rather a third-party consultant. Dkt. No. 72 at 11. This argument with respect to the NYCHRL is foreclosed by the text of the statute. The NYCHRL states that "natural persons working as independent contractors in furtherance of an employer's business enterprise shall be counted as persons in the employ of such employer." NYCHRL § 8-102. Here, there is no dispute that Inzunza is a "natural person" and that she performed her work in furtherance of Defendants' business during the relevant time period. Thus, Inzunza was an employee under the NYCHRL.

There is also a triable issue of fact as to whether Inzunza was an employee of MedQuest under the NYSHRL. In determining whether an independent contractor is an employee under the NYSHRL, courts apply a multi-factor test looking at thirteen factors including "whether the work is part of the regular business of the hiring party," "the duration of the relationship between the parties," and "the hiring party's right to control the manner and means by which the product is accomplished." *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 (2d Cir. 2000). The evidence, construed in the light most favorable to Plaintiff, sufficiently supports that Inzunza acted similar to an employee of MedQuest around the time of Plaintiff's termination: MedQuest is a small company with between six to seven employees during Plaintiff's

employment, Dkt. No. 84, and Inzunza testified that she worked at MedQuest for approximately

two years prior to Plaintiff's termination, performed a wide variety of work at MedQuest,

including advertising, marketing, and website work, and went into the office multiple times a

week in the year leading up to the time of Plaintiff's termination, Dkt. No. 73-5 at 12, 13, 19, 21,

23.  From the evidence proffered by Plaintiff, a reasonable jury could also conclude that Inzunza

carried herself as an employee, exerting the authority that an employee would have, and that

Inzunza thus acted as an employee of MedQuest during the relevant period.  Moreover, even if

Inzunza was not, in fact, an employee of MedQuest under the NYSHRL, Plaintiff may still have

engaged in protected activity under the NYSHRL.  "A plaintiff 'need not establish that the

conduct she opposed was actually a violation of [the NYSHRL or NYCHRL], but only that she

*possessed a good faith, reasonable belief* that the underlying employment practice was unlawful

under that statute.'"  *Buchanan v. City of New York*, 556 F. Supp. 3d 346, 365–66 (S.D.N.Y.

2021) (emphasis added).[11]

     Defendants also argue that they are entitled to summary judgment on Plaintiff's

retaliation claims because Plaintiff's complaint was not "sufficiently specific," as a matter of

law, to support her retaliation claims.  The Court rejects this argument as it pertains to Plaintiff's

---

[11] The single case Defendants cite in support of the proposition that a retaliation claim cannot be
premised on a complaint about the conduct of a third-party non-employee, *Wu v. Good
Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575 (2d Cir. 2020), is not to the contrary.  While
Defendants claim that this case stands for the proposition that the discriminatory acts of a
private-practice physician with privileges at the defendant's hospital "could not amount to an
'employment practice' of the defendant hospital since he was a third-party, non-employee," Dkt.
No. 72 at 16, the Second Circuit never decided this issue.  Instead, the Second Circuit noted that
"Plaintiff conceded that she was not alleging that Dr. Livoti's behavior was itself an
'employment practice' of the Hospital Defendants."  *Good Samaritan Hosp. Med. Ctr.*, 815 F.
App'x at 582.  Accordingly, the Second Circuit only addressed whether the hospital's conduct *in
response* to the complaint could constitute the relevant discriminatory employment practice for
purposes of her retaliation claim and found that it could not because the plaintiff never
complained of or opposed it following her initial complaint about the doctor.  *Id.*

complaint concerning age discrimination.  While a complaint must put an employer on notice of

discrimination, the complaint may be informal and no magic words or specific language must be

used by the complainant.  *See Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470

F. Supp. 2d 345, 357 (S.D.N.Y. 2007); *Ramos v. City of New York*, 1997 WL 410493, at *3

(S.D.N.Y. July 22, 1997).  In this case, Plaintiff testified at her deposition that she told Stone,

immediately after meeting with Inzunza, about Inzunza's allegedly discriminatory comment

about Plaintiff's age.  Specifically, Plaintiff testified that she told Elliot that "Leslie had said that

[she was] too old to commute to the city."  Dkt. No. 73-2 at 245.  The content of this comment,

construed in the light most favorable to Plaintiff, raises a genuine issue of fact as to whether it

would have put Defendants on notice that Plaintiff felt that she was being discriminated against

based on her age.  Accordingly, the Court rejects Defendants' argument that summary judgment

on Plaintiff's NYSHRL and NYCHRL retaliation claims on the basis of age discrimination be

granted on this basis.[12]

---

[12] Defendants also argue that "Plaintiff admits that she cannot make out a retaliation claim
related to challenging gender discrimination since Plaintiff admits she _never_ complained about
gender discrimination prior to her termination."  Dkt. No. 72 at 11.  In her opposition to
Defendants' Rule 56.1 statement of facts, Plaintiff appears to contest this statement, noting that
she complained to Stone about a co-worker referring to her as a "f***ing bitch."  Dkt. No. 90 at
9–10.  However, Plaintiff cites to no evidence concerning when she made this complaint relative
to her termination, *id.*, and the evidence cited supports that the co-worker who made that
comment was fired while Plaintiff was employed at MedQuest, Dkt. No. 73-2 at 85–86.  This
evidence, without more, is thus wholly insufficient to support an inference of retaliatory intent.
Moreover, Plaintiff in her opposition brief only asserts retaliation on the basis that "Plaintiff
complained about age discrimination," not gender discrimination.  Dkt. No. 88 at 15.  The Court
therefore separately finds that this theory of liability (*i.e.*, retaliation for challenging gender
discrimination) has been abandoned.  *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75
(E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for
summary judgment on one ground and the party opposing summary judgment fails to address the
argument in any way.").

The Court, however, grants summary judgment in favor of Defendants on Plaintiff's retaliation claims to the extent that those claims are based on the theory that the protected activity that Plaintiff engaged in was filing the complaint in this action and the adverse action taken against her was Defendants' filing of a counterclaim.  "The courts in this District have repeatedly held that '[a] compulsory counterclaim is not actionable for retaliation unless it is totally baseless.'"  *Sherman v. Fivesky, LLC*, 2020 WL 5105164, at *6 (S.D.N.Y. Aug. 31, 2020) (quoting *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 474 (S.D.N.Y. 2008)). "The underlying principle is that the employer should not be required to forfeit a potentially meritorious claim against its employee simply because the employee has brought a claim against the employer."  *Id.*; *see Grauer v. UBS Finan. Servs., Inc.*, 2008 WL 11398936, at *8 (S.D.N.Y. Dec. 17, 2008) ("[T]o hold otherwise would discourage employers with legitimate claims against employees alleging discrimination from bringing suit, because doing so would inevitably subject them to charges of unlawful retaliation.").  Defendants' counterclaim is not "totally baseless" and, in fact, has survived summary judgment as a material issue of fact exists.

Moreover, other than the fact that the counterclaim was filed after Plaintiff filed suit and Defendants have chosen not to sue certain other employees in the past for allegedly improper behavior, Plaintiff proffers no evidence that Defendants' actions were the result of any retaliatory intent.  *Fivesky, LLC*, 2020 WL 5105164, at *7.  To prove retaliation, a plaintiff must generally "show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 533 (S.D.N.Y. 2015) (citation omitted).  However, as a general matter, "[w]hen an employee initiates the litigation, a counterclaim cannot dissuade the employee from making a charge of

23

discrimination, by filing a lawsuit, because the charge necessarily must be made before the employer can file a counterclaim." *Fivesky, LLC*, 2020 WL 5105164, at *7 (quoting *Sparks v. Duncan Race Cars, Inc.*, 2014 WL 7403382, at *7 (D. Colo. Dec. 29, 2014)).  The counterclaim in this case was filed *after* the Plaintiff filed her complaint and thus Defendants already had to defend themselves in the action.  Plaintiff also offers no evidence that Defendants threatened to file their counterclaim *prior to* Plaintiff filing her complaint in this action: while Plaintiff claims in her opposition to Defendants' Rule 56.1 statement of facts that Defendants threatened to sue her if she pursued her claims against Defendants, she only cites to her complaint—and no other evidence—for this proposition.  Dkt. No. 90 at 30; *see Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) ("[P]arty faced with a summary judgment motion may not rest upon the mere allegations or denials of the party's pleading." (internal quotation marks and citations omitted)).  Moreover, Plaintiff herself states that Defendants did not investigate Plaintiff's activity at the company and learn of the bases of their counterclaim until after Defendants learned that Plaintiff intended to file suit.  Dkt. No. 80 ¶ 20.  "This is [thus] not a case . . . in which a defendant initiated an investigation of an employee's pre-termination conduct on the whim that the employee would complain of discrimination and then held a potential claim in reserve, as a threat to deter the employee or others from lodging their complaint, or filed a lawsuit immediately after an administrative complaint and before a federal court lawsuit." *Fivesky, LLC*, 2020 WL 5105164, at *7 (collecting cases).  Without any such evidence, the counterclaim cannot be said to have been "intended to prevent Plaintiff from making his complaint but only to permit Defendants to defend themselves once that complaint had been made." *Id.* at *7.  For that additional reason, the counterclaim may not form the basis of Plaintiff's claim for retaliation.

Finally, Defendants argue that even if Plaintiff's case for retaliation survives, such claims must fail against individual defendants Inzunza and Stone since they are not "employers" under the NYSHRL or the NYCHRL and therefore cannot be held liable for MedQuest's alleged retaliation.  Dkt. No. 72 at 13.  This claim is unavailing.  An individual—as opposed to an employer—may be liable under the NYSHRL or the NYCHRL where the individual defendant "participates in the conduct giving rise to the plaintiff's discrimination or retaliation claim," as both Inzunza and Stone did here.  *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) (cleaned up); *see Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020); *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015); *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 457 (N.Y. 2021) (stating that NYCHRL prohibits "any person" "from retaliating against another person for engaging in certain protected activities").

## CONCLUSION

Plaintiff's motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. Nos. 71, 77, and 91.


SO ORDERED.

Dated: November 7, 2022
      New York, New York

                                        LEWIS J. LIMAN
                              United States District Judge